**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 06-20283-CR-LENARD/TORRES

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

QUINTIN JAMES MINNIS,

       Defendant.

_____/

**SUPPLEMENTAL REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS**

This matter is before the undersigned Magistrate Judge following the entry by the Honorable Joan A. Lenard on October 30, 2006, of an Order of Limited Remand for Supplemental Report and Recommendation. [D.E. 49]. The undersigned previously entered a Report and Recommendation ("R&R") on August 28, 2006, recommending that Defendant's Motion to Suppress Physical Evidence and Statements be granted. [D.E. 40]. The undersigned concluded, after considering Defendant's motion, the government's original and supplemental responses thereto, and the testimony of the witnesses and the exhibits admitted into evidence at the two-day hearing conducted in this case, that the government had failed to justify the entry of law enforcement officers into Defendant's residence to search for a fugitive subject to only an arrest warrant, and absent a search warrant. *Id.* at 1-2.

The government filed Objections to the R&R. [D.E. 45]. Following a review of the relevant pleadings, the R&R, and the government's Objections thereto, Judge Lenard has remanded the matter

> for the limited purpose of providing a supplemental Report and Recommendation containing specific factual determinations and legal analysis on the issue of whether, based on the evidence presented at the Hearing, law enforcement officers had proper consent for their initial entry into the Defendant's residence pursuant to *Steagald*.[1]

*Id.* at 2.  *Steagald,* as Judge Lenard noted, holds that absent exigent circumstances or consent, a law enforcement officer may not legally search for the subject of an arrest warrant in the home of a third party without first obtaining a search warrant.  451 U.S. at 211.

## I. SUPPLEMENTAL FINDINGS OF FACT[2]

Based on the record evidence in this case, the undersigned finds that law enforcement officers did not seek or obtain consent before entering into Defendant's residence on April 25, 2006.  None of the officers who testified at the suppression hearing suggested in any way that they asked for permission or were otherwise invited to enter the residence before going inside.  Their testimony is entirely consistent with that of Joseph Ferguson ("Ferguson"), the owner of the

---

[1] *Steagald v. United States,* 451 U.S. 204 (1981).

[2] Only those facts relevant to the issue of whether officers had consent for the initial entry into Defendant's residence are included in this Supplemental R&R.  The government attached a copy of the transcript of the suppression hearing to its Objections to the R&R; the evidentiary portion of the hearing is appended to the Objections as Exhibit A.  The undersigned will cite to Exhibit A, and relevant testimony adduced at the hearing, as "Tr." followed by the transcript page number (e.g., "Tr. 7").

apartment and the person who opened the door to the officers.[3]  It is clear from his testimony that the officers never sought or obtained his consent before entering the apartment.  Indeed, in response to the motion to suppress, the government notably never argued that consent was obtained before the initial entry.

According to the testimony obtained at the hearing, eight to ten federal and state law enforcement officers went to Ferguson's (and Defendant's) apartment at approximately 7 a.m. on April 25, 2006, to execute a fugitive arrest warrant.  Three of the officers – ATF Special Agent John DeVito, Deputy U.S. Marshal Sean Conboy, and City of Miami Police Detective Wayne Tillman – approached the front door of the residence.  The officers wore clearly identifying police garb and at least two of them had their weapons in hand.  They initially knocked on the door and, looking through a window next to the front door and into a dark room, they saw a young black male come out of the back part of the apartment, walk toward the front door, and turn and run back to a hallway.  At that point, although they "couldn't make out facial descriptions or anything like that,"[4] but believing that the male fit the very general description of the fugitive they were seeking, the officers pounded on the front door and yelled "more forcefully" to execute their duties.[5]  An elderly black man – later identified as Ferguson – opened the door.

---

[3]    Joseph Ferguson is Defendant's grandfather.  Defendant resided in one of the bedrooms in his grandfather's apartment.

[4]    [Tr. 49, lines 5-6].

[5]    [Tr. 50].

According to Deputy U.S. Marshal Conboy, when Ferguson opened the door, Conboy first verified he was at the right apartment, then he and four or five other officers entered the apartment. [Tr. 7, 19]. Conboy immediately proceeded to the back of the apartment in the direction that the young black male had gone. *Id.*

According to ATF Special Agent DeVito, when Ferguson opened the door, the officers identified themselves and explained why they were there. [Tr. 50, 79]. They asked who else was in the residence; Ferguson replied that his two grandchildren were inside. *Id.* At that point, DeVito testified, officers proceeded to enter the apartment and "Mr. Ferguson was asked to step just outside the doorway of the residence." [Tr. 50, 79-80]. DeVito later clarified this statement:

Q: And then Mr. Ferguson subsequently backed up so you guys could come in, correct?

A: Actually we kind of pulled him out of the threshold of the doorway after he informed us that there were other individuals in the residence.

\* \* \*

There was actually a chair sitting right there on the front stoop, and we just asked him to have seat there.

Q: And then you proceeded into the residence at that point?

A: Yes, ma'am, we did.

[Tr. 79-80].

According to Ferguson, whom the undersigned found fully credible, he opened the front door because the officers were banging on it and he did not want them to break it down. [Tr. 115]. Ferguson testified that the officers then entered

4

the apartment, "pass[ing] by me so fast, I didn't know how many w[ere] there." *Id.* He then said that the officers sat him down outside on the porch. [Tr. 116].

The testimony of all three witnesses on this point is entirely consistent: the officers knocked on the door, Ferguson opened it, a few words may have been exchanged, but in no event was consent either sought or obtained prior to the officers entering the apartment.

## *II. ANALYSIS*

As already noted, the government has never argued – and indeed on this record could *not* argue – that law enforcement officers obtained consent from an occupant before making their initial entry into Ferguson's (and Defendant's) residence on April 25, 2006. The undersigned agrees; on this record Ferguson did not voluntarily consent to the entry into his home on the morning of April 25th.

A warrantless entry is permissible when voluntary consent is obtained. *Schneckloth v. Bustamonte,* 412 U.S. 218 (1973). "Voluntariness is a question of fact to be determined from all the circumstances" and may not be "the result of duress or coercion, express or implied." *Id.* at 248-49. The court should examine a number of factors, "including the presence of coercive police procedures, the extent of the defendant's cooperation with the officer, the defendant's awareness of his right to refuse consent, the defendant's education and intelligence, and the defendant's belief that no incriminating evidence will be found." *United States v. Purcell*, 236 F.3d 1274, 1281 (11th Cir. 2001). The government bears the burden of proving both the existence of consent and, further, that the consent was not a

5

function of acquiescence to a claim of lawful authority but rather was given freely and voluntarily. *United States v. Blake*, 888 F.2d 795, 798 (11th Cir. 1989).

In this case, three officers banged on Ferguson's door at 7:00 in the morning. This elderly man got out of bed, saw they were police, and opened the door in response to their actions. [Tr. 114-15]. At least two of the officers had their weapons drawn. The officers and Ferguson exchanged a few words, but there was no discussion about whether Ferguson would voluntarily permit the officers to enter the residence.

Instead, the officers identified the apartment as Apartment 1, informed Ferguson why they were there and asked whether other people were inside, instructed him to step outside, then entered his residence. They did not ask whether they could enter; they just did. Under these circumstances, we must find that Ferguson did not voluntarily consent to entry into his residence.

Accordingly, not having obtained valid consent to enter the residence, officers needed either a search warrant – which they did not have – or probable cause and exigent circumstances before it was legally permissible for them to enter that home. *Steagald*, 451 U.S. at 205; *United States v. Santa*, 236 F.3d 662, 668 (11th Cir. 2000) (citing *United States v. Tobin*, 923 F.2d 1506, 1510 (11th Cir. 1991) (*en banc*)). As explained in the August 28, 2006 R&R, there were neither in this case. Because none of the constitutional prerequisites for a warrantless entry without consent were present, and because the law deems this entry presumptively unconstitutional, the undersigned recommends that Defendant's

6

motion to suppress be granted, and that the evidence seized from Defendant's residence and the statements Defendant made on April 25, 2006, be suppressed.[6]

### III. CONCLUSION

Based upon a thorough review of the record as a whole, the undersigned Magistrate Judge does hereby **RECOMMEND** that Defendant's Motion to Suppress Physical Evidence and Statements [D.E. 23] be **GRANTED** for the reasons set forth in the Report and Recommendation issued on August 28, 2006, as supplemented herein.

Pursuant to Local Magistrate Rule 4(b), the parties have **eight (8)** days from the date of this Report and Recommendation (i.e. November 9, 2006) to serve and file written objections, if any, with the Honorable Joan A. Lenard, United States District Judge.  *See* S.D. Fla. Local Mag. Rule 4(b) (court has discretion to modify objection period).  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein.  *R.T.C.*

---

[6] We have, however, drawn a distinction between the initial entry – that lacked legal consent – with the consent that was later obtained, after the passage of time and after additional steps were taken by law enforcement to establish voluntariness.  As explained in footnote 15 of the R&R, if a legal initial entry occurred contrary to the R&R's conclusion, the passage of time, the use of a consent form that was later read to Ferguson and the Defendant, and their express consent at that point without any threat or show of force, all made it possible for Ferguson and Defendant to consent to a search after the protective sweep was conducted.  Officers in fact obtained that consent.  But for the other reasons argued in the R&R, that later consent to search (not enter) cannot save the government's unlawful and warrantless entry into the apartment.  *See, e.g., Santa,* 236 F.3d at 676-79 (illegal warrantless entry tainted consent to search provided immediately after illegal entry and all evidence seized thereunder).

*v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 1st day of November, 2006.

 _____
 EDWIN G. TORRES
 United States Magistrate Judge

Copies provided to:
Honorable Joan A. Lenard
All Counsel of Record